1815.
Fulton
vs
Lewis

the new supervisor, if the law justified such appointment. But until there had been such appointment and neglect to pay to the new supervisor, no suit could be brought against him. There could be no breach until he was called upon by some one properly authorised to receive, and he had refused to pay *African Company vs. Mason*, 10 *Mod.* 227. To show that the bond of the collector of a tax, which had not been laid at the time prescribed by law, was void, and the sureties therein were not liable, they referred to *Quynn vs. The State, use Pue et al.* 1 *Harr. & Johns.* 36.

No Counsel argued for the Appellee.

THE COURT reversed the judgment of the County Court on two grounds—1. There was a special authority delegated which had not been strictly pursued by the levy court in making the appointment of a supervisor on the day directed by the act of assembly. 2. There was no replication setting forth the breaches.

JUDGMENT REVERSED.

----

MAY.

FULTON VS LEWIS.

J L, a married man, a native of *St. Domingo*, flying from the dangers which existed there, removed into this state in 1793, bringing with him three negroes, whom he had before and then owned as slaves. In 1794 he sold one of them as a slave, to W C, who sold him to R F. J L continued to reside in this state until 1796, when he returned to the *West Indies.* The negro thus sold petitioned for his freedom against R F—*Held,* that he was entitled to freedom

APPEAL from the Court of Oyer and Terminer, &c. for *Baltimore* county. This was a petition for freedom, and the general issue pleaded.

At the trial the following facts were admitted in evidence: *John Levant,* a married man, being a native and resident of the Island of *Saint Domingo*, removed from that place in July 1793, flying from disturbances which then existed there, endangering the lives and property of the inhabitants; and brought with him into this state three negroes, of whom the petitioner, (now appellee,) is one, whom he then and before owned as a slave. That in May 1794, he sold the petitioner, as a slave, to *William Clemm,* who sold him as such to the defendant, (the appellant.) That said *Levant* arrived at *Baltimore* in August 1793, and continued to reside there until sometime in 1796, when he returned to the *West Indies.* The defendant thereupon prayed the direction of the court to the jury, that if they believed the facts, the petitioner was not entitled to his free-

dom. This opinion the Court, [*Scott*, Ch. J.] refused to give; but directed the jury, that upon these facts the petitioner was free. The defendant excepted; and the verdict and judgment being against him, he appealed to this court, where the case was argued before CHASE, Ch. J. and BUCHANAN, NICHOLSON, EARLE, JOHNSON, and MARTIN, J.

Glenn, for the Appellant, contended that the act of 1783, ch. 23, under which the petitioner claimed his freedom, meant only a *voluntary importation* of slaves, and not an importation arising from absolute necessity, produced by causes over which the owner, as in this case, had and could have no control. He referred to *De Kerlegand vs. Negro Hector*, 3 *Harr. & M'Hen.* 185, and the act of 1792, ch. 56.

Montgomery, (Attorney-General,) Jenings and Scott, for the Appellee.

JUDGMENT AFFIRMED.

## WALES VS. WALLING.

1815.<br>Wales<br>vs<br>Walling

MAY.

APPEAL from *Frederick* County Court. This was an action of debt for $75. The declaration stated, that the defendant, (now appellee,) on the 29th of August 1808, at, &c. by his certain writing obligatory, acknowledged himself to be held and firmly bound unto the plaintiff, (now appellant,) in the aforesaid sum of seventy-five dollars, to be paid to him the plaintiff when he should be thereunto required, &c. The oyer given of the writing obligatory on the defendant's prayer, is as follows: "For value received, I do promise to deliver unto Mr. *Roger Wales*, on or before the first day of April 1809, one horse, to be valued by two judicious men at seventy-five dollars current money of the *United States*; and in case of a disagreement in the persons so appointed to appraise said horse, I do hereby hold myself firmly bound and indebted to the said *Roger Wales*, or assigns, in the sum of seventy-five dollars current money." It was signed and sealed on the 29th of August 1808, by the defendant. The defendant demurred specially to the declaration, and assigned the following causes of demurrer.

1. Because the writing obligatory, whereof the plaintiff hath given over, varies from the writing obligatory set forth in the declaration.

J W, by his note under seal, promised to deliver to R W, on or before, &c. a horse, to be valued by two judicious men at $75, and in case of a disagreement in the persons so appointed to appraise said horse, he held himself bound and indebted to R W in the sum of $75. On this note R W brought an action of debt for $75, against J W, and declared on the note as if it had been given expressly for that sum of money. J W, after having had oyer of the note, demurred specially to the declaration, assigning for causes a variance between the note and that set forth in the declaration; that there was no averment that J W did not deliver the horse to be valued, nor a disagreement of the persons to have been appointed to appraise the horse, nor a demand of or refusal by J W to deliver such horse. Demurrer ruled good